## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

NAJIE SHABAY WALKER,

     Plaintiff,

     v.

WESTERN CORRECTIONAL
INSTITUTION,
SGT. CLARK and
C.O. OFFICER W. KEISTER,

     Defendants.

Civil Action No. TDC-15-2111

## MEMORANDUM OPINION

Plaintiff Najie Shabay Walker, a self-represented inmate at Eastern Correctional Institution in Westover, Maryland, has filed suit under 42 U.S.C. § 1983 against Defendants Western Correctional Institution ("WCI") and Correctional Officers Lisa Clark and William Keister. Pending is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

The following facts are presented in the light most favorable to Walker, the nonmoving party:

### I.    May 13, 2015 Stabbing

On May 13, 2015, Walker was an inmate at WCI in Cumberland, Maryland. Walker's cell was located in Housing Unit 5. At about 7:00 p.m. that night, he and other inmates in Housing Unit 5 moved in a large group from their cells to the A Tier Upper Recreation Hall. As

soon as Walker entered the Recreation Hall, someone stabbed him in the neck. Walker ran out of the Recreation Hall and down a flight of steps to the A Tier desk, which is sometimes staffed by correctional officers. Seeing no one at the desk, Walker continued to run, passing through the A Wing entry door, until he met Clark and Keister in the Housing Unit lobby where they had been observing inmates move to the Recreation Hall. Walker yelled that he had been stabbed. Keister told him to put pressure on the wound and then summoned medical help. Walker was taken first to the prison medical department and then to the Western Maryland Regional Medical Center. He received two stitches to close a two-centimeter wound in his neck.

On the night he was stabbed, Walker told an investigator from the Maryland Department of Public Safety and Correctional Services, Internal Investigations Division ("IID"), that he did not see who stabbed him and did not want press charges even if his assailant could be identified. The relevant part of Housing Unit 5 had no functioning security cameras. IID investigated the scene but was unable to locate the weapon used to stab Walker or to identify his attacker.

On May 25, 2015, Walker filed an Administrative Remedy Procedure ("ARP") grievance, claiming that Clark and Keister should have conducted "full body searches" of inmates entering the Recreation Hall. Mot. Summ. J. Ex. 5, ARP Records at 3-4. Walker alleged that their "deliberate indifference" caused his injuries. *Id.* The grievance also implied that the A Tier desk, which Walker ran past after being stabbed, should have been staffed and that the A Wing door, which Walker ran through, should have been shut.

On July 1, 2015, Walker still had not received a response to his grievance, so he filed an appeal to the Commissioner of Corrections. On July 8, 2015, the Warden dismissed Walker's ARP grievance. The Warden stated that Clark and Keister had followed prison procedures on the night Walker was stabbed. Their position in the Housing Unit lobby was proper because,

2

during a mass movement of inmates, correctional officers "take a vantage point that gives them the best position for both observation and safety." *Id.* at 3. Prison policy does not require that inmates be searched before entering the Recreation Hall.

The Commissioner of Corrections denied Walker's appeal because he had not attached the Warden's decision as required by the prison's grievance procedures. Walker was instructed to refile the appeal, this time attaching the decision, by July 31, 2015. Walker refiled but did not include the Warden's decision. On July 28, 2015, his appeal was dismissed for that reason. Walker did not appeal the dismissal to the Inmate Grievance Office.

## II.    Procedural History

On July 17, 2015, Walker filed a § 1983 Complaint initiating this case. Like Walker's ARP grievance, the Complaint accuses Clark and Keister of deliberate indifference for failing to conduct full body searches of inmates entering the Recreation Hall, resulting in Walker's injuries. Walker also implies that both Clark and Keister left their posts without being officially relieved or authorized to do so by an immediate supervisor or the designated officer in charge. The Complaint seeks $250,000 in damages and unspecified "declaratory" and "injunctive orders." Compl. at 5. Neither the Complaint nor Walker's ARP grievance alleged that Clark, Keister, or any other prison official had any reason to suspect that Walker would be attacked.

On February 5, 2016, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. On February 8, 2016, the Clerk of Court mailed Walker a letter informing him that Defendants had filed a motion which, if granted, could result in the dismissal of his case. The letter advised Walker that he could file materials in opposition to the Motion within 17 days and that failure to do so could result in the dismissal of his case without further notice. Walker has not filed a response to Defendants' Motion.

3

## DISCUSSION

In their Motion, Defendants seek dismissal or summary judgment on the grounds that WCI is not subject to suit under § 1983, the Eleventh Amendment bars claims against WCI, Walker failed to exhaust administrative remedies, Clark and Keister were not deliberately indifferent in failing to protect Walker, and Clark and Keister are entitled to qualified immunity because they did not violate a clearly established federal right.

### I.    Legal Standard

#### A.    Motion to Dismiss

The argument that WCI is not subject to suit under § 1983 is properly considered as the subject of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

#### B.    Motion for Summary Judgment

Defendants have submitted evidence for the Court's review. Walker had notice that the Court might consider this evidence in ruling on the Motion and did not file an opposition or

4

request that the Court provide him with the opportunity for discovery. Consequently, the Motion will be construed, with respect to the remaining arguments, as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.     Claims Against Western Correctional Institution

Only a "person" can be held liable under § 1983, and state agencies are not persons within the meaning of the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). WCI, operated by the Maryland Department of Public Safety and Correctional Services, is not a person amenable to suit under § 1983. *See Allison v. Cal. Adult Auth.*, 419 F.2d 822, 822-23 (9th Cir. 1969) (holding that a state prison is not a person under 1983); *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (holding that the Maryland

Department of Public Safety and Correctional Services is not amenable to suit under § 1983). Consequently, the claims against WCI must be dismissed. Because § 1983 does not permit Walker to sue WCI, the Court does not reach WCI's assertion of Eleventh Amendment Immunity. *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 779 (2000) (stating that the question of whether a statute permits a cause of action against States should be addressed before the question of whether the Eleventh Amendment bars the cause of action); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) (noting that pursuant to *Vermont Agency of Natural Resources*, the district court should have dismissed claims against state officials on the grounds that they were not persons within the meaning of § 1983 rather than on Eleventh Amendment grounds).

### III.    Exhaustion of Administrative Remedies

Defendants argue that Walker's claims against Clark and Keister must be dismissed because Walker has failed to exhaust available administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is an affirmative defense, which is most properly considered on a motion for summary judgment. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement serves a valuable function by "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Inmates must

6

exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, No. 15-339, 578 U.S. __ , slip op. at 8 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). But an inmate does not exhaust administrative remedies "simply by failing to follow the required steps so that remedies that once were available to him no longer are." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *Chase v. Peay*, 286 F. Supp. 2d 523, 529-30 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004) (requiring that Maryland prisoners appeal up to the Inmate Grievance Office).

One way for inmates in Maryland state prisons to present their complaints to prison officials is through the ARP. The ARP has three steps: an initial request for relief from the warden, an appeal of the warden's denial to the Commissioner of Corrections, and an appeal of the Commissioner's denial to the Inmate Grievance Office ("IGO"). Md. Code Regs. 12.07.01.04(B)(9)(a); *Blake v. Ross*, 787 F.3d 693, 697 (4th Cir. 2015), *vacated on other grounds by Ross v. Blake*, No. 15-339, 578 U.S. __ (2016). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs., § 10-210 (2008).

Walker failed to exhaust administrative remedies. He filed an ARP grievance regarding the stabbing incident, and he appealed the denial of that grievance to the Commissioner of Corrections. He did not, however, take the final step of appealing the Commissioner's dismissal to the IGO.

Although IID investigations sometimes complicate Maryland prisoners' efforts to exhaust administrative remedies, *see Ross*, No. 15-339, 578 U.S. __, slip op. at 12-14, the IID investigation into the assault did not excuse Walker's failure to complete the ARP process. The IID investigation sought only to identify who perpetrated the stabbing; it did not investigate Walker's accusations against Clark and Keister. Neither the Warden nor the Commissioner of Corrections rejected Walker's ARP grievance on the grounds that there was also an IID investigation. Here, the Warden considered Walker's grievance and denied it on the merits, and the Commissioner of Corrections dismissed Walker's appeal because he did not follow the prison's appellate procedures after being provided an opportunity to do so. Because the ARP process was made fully available to Walker, when he failed to appeal the denial of his ARP grievance all the way to the IGO, he had failed to exhaust administrative remedies. *See Ross*, No. 15-339, 578 U.S. __, slip op. at 14-15 (holding that even where an IID investigation has occurred, if the ARP process is available to a Maryland inmate, it must be exhausted). Walker's claims against Clark and Keister are therefore dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED. A separate Order shall issue.

Date: June 13, 2016

THEODORE D. CHUANG
United States District Judge

8